Hawkins J.,
delivered the opinion of the Court.
The plaintiff in error, a free man of color, was indicted in the Circuit Court of Eranklin County, at its November Term, 1865, for the murder of one Grilderoy Horton. At the March Term, 1867, of said Court, he *36 was arraigned, plead “not guilty,” was tried and convicted of voluntary manslaughter. Motions for a new trial and in arrest of judgment were made and overruled; and the plaintiff in error, was, by the judgement of the Court, sentenced to imprisonment at hard labor in the penitentiary for the term of three years; from which judgement of the Court, he has appealed to this Court.
The proof shows that the plaintiff in error, while a slave in 1864, upon discovering the deceased, who was also a slave, in bed with the wife of the plaintiff in error, inflicted upon the deceased a wound of which he shortly thereafter, died.
Various questions have been raised in argument, but the main question in the case and the one upon which we rest the decision of the case, is this: Can the plaintiff in error, being a free man, be punished for the crime of manslaughter committed while he was a slave? And we think most clearly according to the principles announced by this Court in the case of Davidson vs. The State, 2 Coldwell, 184; and of Brothers vs. The State, 2 Coldwell, 201: and of Whorton vs. The State, decided at the present term of this Court, and authorities cited in' manuscript, he cannot.
By the Code, certain crimes, when committed by slaves, are declared to be capital, and punished with death by hanging; also certain other acts, when done by slaves, are declared to be offenses, the punishment of which is prescribed; but, the crime of manslaughter is not enumerated in either of these classes. Sec. *37 2629, provides, that, “The Circuit and Criminal Courts shall have exclusive jurisdiction of all capital offenses, committed by slaves.” The next succeeding section declares, “All other offenses committed by slaves, may be tried by a single Justice of the Peace;” and by the next succeeding section, it is declared, “Every indictment against a slave for murder, shall be held to include a charge for manslaughter; and the Circuit and Criminal Courts shall have jurisdiction in the trial of slaves charged with manslaughter.” This section conferred upon the Circuit and Criminal Court, only, the jurisdiction to try the slave, whilst the jurisdiction to punish, is conferred by sec. 2624, the provisions of which are as follows: “All other offenses committed by slaves, shall be punishable at the discretion of the tribunal trying the offender, but not with any punishment extending to life or limb.” -At the time of the commission of this offense, this was the only statute declaring the mode or extent of its punishment, or declaring. any penalty for the offense when committed by a slave.
Sec. 4604, provides, that, “Whoever is convicted of the crime of voluntary manslaughter shall undergo confinement in the penitentiary, not less than two nor more than ten years.” This section had reference only to the punishment to be inflicted upon free persons convicted of the crime of voluntary manslaughter, and had no reference to the punishment of slaves, convicted of the same offense. Although the letter of the statute conferring upon the tribunal trying the same, the jurisdiction to punish the, offender at its discretion, *38 may have authorized the imprisonment of a slave at hard labor in the penitentiary, such mode of -punishment was not in accordance with the spirit of policy of the law, even if it could be said that confinement óf a slave at hard labor, was any punishment whatever. But be that as it may, the statute provided one mode of punishment for a free person when guilty of voluntary manslaughter, and provided that a slave, for the same offense, might be punished in another and different mode, at the discretion of the tribunal trying the offender. And in the exercise of this discreation, the punishment inflicted upon a slave, may have been greater or less than that inflicted upon a free person for the same offense. When the ‘slave became a free man, he could not be punished as a slave, for an offense committed by him while a slave. Consequently the provisions of the slave code, providing for the punishment of slaves, was virtually repealed by the abolition of slavery, because there was, thereafter, nothing for the statute to operate upon — there were no slaves to punish.
For these reasons, to say nothing of the effect of the recent Act of the Legislature of the State, or of the Act of Congress, known as the Civil Bights Bill, touching the extent and manner of the punishment of free persons of color, the refusal of the Court below to grant a new trial, was erroneous. Had the jury, -by their verdict, ascertained the fact, as it appears in proof, that the plaintiff in error was a slave at the time of the commission of the crime, the judgement upon the verdict would be arrested and the prisoner discharged; *39 but in the absence of sucb finding, tbe judgement will be reversed and tbe cause remanded; when a new trial can be bad, and this fact, together with tbe guilt or innocence of tbe accused, ascertained by tbe jury.